Thomas W. Costello v. Commissioner.
Thomas W. Costello v. Commissioner
Docket No. 3430.
United States Tax Court
1945 Tax Ct. Memo LEXIS 317; 4 T.C.M. (CCH) 109; T.C.M. (RIA) 45034; January 27, 1945
*317 Owen P. Hughes, Esq., for the petitioner. Douglas L. Barnes, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: The Commissioner determined a deficiency in petitioner's income tax for the year 1941 in the amount of $801.37. The sole issue is whether respondent erred in including in petitioner's gross income $4,998.29, which had been reported as net income in a separate return filed by his wife. Findings of Fact Petitioner and his wife, Pauline M. Costello, were united in marriage at Great Falls, Montana, on January 11, 1911, and the relationship has existed since that date. At the time of the marriage petitioner owned and was operating a barber shop in Shelby, Montana. The shop had originally cost approximately $500; but prior to the marriage of the parties it had been improved. At the time of the marriage it was worth approximately $2,200 subject to a mortgage of $1,500. By 1914 the mortgage had been reduced to $700. During that year the loan was refinanced by petitioner's mother-in-law. The mother-in-law died in 1915. Petitioner's wife inherited one-fourth of her property. This included a one-fourth interest in a hotel *318 or lodging house in Shelby, Montana, known as Northwestern Hotel, an interest in a mine, the lien on petitioner's barber shop, and proceeds of life insurance. In 1922 petitioner's wife took over the hotel. Later in the same year he and she purchased some lots in Shelby, Montana, upon which to build a new hotel. The $700 indebtedness on petitioner's barber shop was released without the payment by petitioner of any part of it. The barber shop was sold in or shortly after 1922 and the proceeds, together with a substantial amount contributed by the wife, derived from her operation of the hotel and the sale of a home the title to which stood in her name, were invested in the new hotel. After the new hotel was completed, furnished, and an additional story built upon it in 1925 it then had 65 rooms and was subject to mortgages, signed by petitioner and his wife, in the aggregate amount of $28,000. Petitioner and his wife operated the new hotel from March 1923 to September 1931. Petitioner met the trains, did the janitor work, tended the furnace, acted as clerk and performed other tasks around the hotel. His wife did the chamber work, took care of the four children, looked after the *319 linens, acted as clerk and performed other duties about the hotel. No written agreement was ever executed by the parties; but they considered themselves to be operating on a 50-50 basis. All of the profits above living expenses were put into the hotel. In 1931 the hotel was sold for $75,000. [1] The profit computed to be $28,774.48, is being reported on the installment basis. $799.12 was included in gross income for the year 1941 as "gain subject to tax." A substantial part of the down payment from the sale of the hotel was put into furniture for an apartment hotel in Spokane, Washington. It was operated by petitioner and his wife for a year or so after which they went to California. In June of 1934 they returned to Spokane. Since that date they have continuously been residents of the State of Washington. In the fall of 1935 petitioner and his wife purchased a small tract of land at the corner of 144th Street and Seattle-Tacoma Highway. The agreed consideration was $4,500. $2,000 was paid on the purchase price at the time of the signing of the contract. $1,000 of this amount came from *320 stock belonging to the Costello children and the remainder from funds belonging to petitioner and his wife. The balance of the purchase price was paid from the operation of a "motel" on this property. At the time of the purchase of the last-mentioned property there was a 5-room house and 6 small cabins on it. Since the purchase Costello and his wife both "worked night and day - all hours of the night" in the operation of the "motel." Petitioner took care of the grounds and buildings, repaired the plumbing, acted as clerk and placed substantial improvements upon the property. His wife did the chamber work, scrubbed the cabins, took care of the home and assisted generally in looking after and renting the cabins. 12 new cabins were built and a central heating plant, laundry room and other improvements were added. The property was sold prior to the hearing but subsequent to the taxable year for $47,500. The title to the motel property was in the name of petitioner and his wife. While petitioner and his wife were operating the hotel in Shelby, Montana, a farm was acquired from a tenant who owed a hotel bill. The total cost was $400, being $300 for the hotel bill and $100 cash. The title *321 was taken in petitioner's name alone. The property was sold in 1941 for $1,600 treated as a long term capital gain and $600 was included in gross income. Although the title to the property stood in the name of petitioner alone it belonged jointly to him and his wife. In 1941 two other ileces of property in King County, Washington, were sold at a small profit. The title to these properties had been in the name of petitioner alone for several months prior to the sale; but the purchase price had been paid from community income. Other funds included in gross income during the taxable year consisted principally of income received from the operation of the "motel." During the years from 1935 to 1940 joint returns of income were filed by petitioner and his wife with the collector of internal revenue for the district of Washington. In each the income was reported as community income and no adjustments were made by the Commissioner for any year. For the year 1941 separate returns of income were filed by petitioner and his wife. The combined net income was shown to be $9,996.58 and 50 per centum or $4,998.29 was reported by each. The taxes shown to be due were paid. In the notice of *322 deficiency the Commissioner held "* * * that the auto camp owned and operated by you in the City of Seattle, State of Washington, constitutes your separate property and that the net rentals derived therefrom during the taxable year 1941 constitute your separate income taxable to you in its entirety. The net income reported by you in your 1941 return has, accordingly, been increased by one-half of the total net rentals from the property which is being transferred from the return filed for that year by your wife, Pauline M. Costello." The net rentals derived from the auto camp constituted community income of petitioner and his wife for the taxable year 1941. Opinion The finding which has been made is determinative of the issue. The facts need not be repeated. Briefly, they depict a not unusual situation. A husband and wife, living together in amity, consolidate their meager resources and work together in a joint undertaking. Oblivious of legal technicalities, the title to some of the property is placed in the name of one, the title to other property is placed in the name of another, and the title to still other property is placed in the name of both. No effort was made by either *323 to hold any of the property as his "separate property." Mortgages were signed by both, payments thereon were made from the common till, and after twenty years the major portion of the net joint earnings was brought into the State of Washington. It was there invested in new enterprises in common. Respondent places some reliance upon . Apparently he views it as authority for his major premise - viz., that the hotel in Montana was the separate property of petitioner. In the cited case the former wife of a ranchman, who had deserted him, obtained a divorce and remarried, brought suit and recovered a judgment in the lower court for the value of household furniture which he had disposed of. The furniture had been purchased during the existence of the marital relationship with money derived from the sale of cream, butter and eggs produced on the farm. The Supreme Court reversed the judgment because of erroneous instructions of the trial court, one of which was to the effect that there was a presumption that the property belonged to the wife. The court stated that the statute had not changed the rule respecting the services which a *324 wife owes her husband as head of the family. Elsewhere in the opinion the court remarked that the State of Montana had "gotten away from the old rule of English jurisprudence whereby a woman's identity and rights were, in consequence of marriage, merged in the husband as lord and master," pointing out that in that state "more rights and protection [are given to a wife] than to her husband. We find nothing in the cited case which supports respondent's view that all of the Montana property belonged to the husband. The subsequent dealings of the parties belies it. Thus at all times since coming into the State of Washington petitioner and his wife not only made no effort to separate their property or to keep their earnings separate but continued to operate substantially as they had always done. Moreover, they obviously intended to avail themselves of the privilege - and burdens - of the Washington statute; for they reported all income on a community basis, continued to use and replenish a common pocket-book, and, at least as to the "motel" - the project which resulted in most of the income during the taxable year - placed the title in their joint names. We, of course, recognize the *325 rule relied upon by respondent to the effect that property brought into Washington, which, by the law of the place of acquisition is separate property, continues to be of the same character. . But * * * where separate funds have become so commingled with community funds as to make it impossible to trace the former or tell which are separate and which are community funds, all of the commingled funds belong to the community; this because of the presumption in favor of the community and the favor with which the law regards such property. Sievers v. Sievers, 119 Pac. (2d) (Wash. 1941) 668. Cf. . Extended discussion of the community property law of Washington is not required. The statutes, as pointed out by the Supreme Court in : * * * provide that, save for property acquired by gift, bequest, devise or inheritance, all property however acquired after marriage, by either husband or wife, or by both, is community property * * *. A description of the community system of Washington and of the rights *326 of the spouses, and of the powers of the husband as manager, will be found in ; . It is clear that there has always been a commingling of the funds of petitioner and his wife. While we are of the opinion that this was the situation in Montana, decision need not rest on that basis. If the property were separate until brought into Washington, the commingling which has been taking place during the past eleven years has made it impossible to tell what portion was ever the separate property of either. On the authority of the Sievers and Gulstine cases cited supra and on the evidence adduced at the trial, we are of the opinion and hold that the income was correctly reported. We, of course, do not hold that the capital gains realized from the sale, in Montana, of property located in that state was community income of petitioner and his wife, residents of Washington; but inasmuch as we are convinced that the property sold belonged to them "50-50," as they expressed it, they correctly reported the profit on the same basis. Decision will be entered for the petitioner. Footnotes
1. The transcript shows $7,500. This is obviously an error since the return shows $75,000.↩